

**Denver Public Works**
Solid Waste Management

2000 W. 3rd Ave.
P: 303.446.3557
F: 303.446.3527
www.denvergov.org/trash
Denver, CO  80223
www.denvergov.org/dpw

June 11, 2013

Mr. Eric Johnson
2074 S. Oswego Wy. #201
Aurora, CO  80014

Dear Mr. Johnson:

This is official notification that disciplinary action is being contemplated against you and that a pre-disciplinary meeting has been scheduled for Thursday, June 20, 2013, at 2:45 p.m. in my office.

This is official notification that disciplinary action is being contemplated against you for alleged misconduct that may violate the following Career Service Rules:

<u>Career Service Rule 16-60, Discipline and Dismissal</u>

The following may be cause for discipline or dismissal of a Career Service employee:

B. Carelessness in performance of duties and responsibilities.

C. 1. Theft, destruction, or neglect in the use of City property or property of any agency or entity having a contract with the City; or

D. Unauthorized operation or use of any vehicles, machines, or equipment of the City, or of any entity having a contract with the City, including, but not limited to, the unauthorized use of the internet, e-mail or telephones.

E. Any act of dishonesty, which may include, but is not limited to:
3. Lying to superiors or falsifying records with respect to official duties, including work duties, disciplinary actions, or false reporting of work hours.

J. Failing to comply with the lawful orders of an authorized supervisor or failing to do assigned work which the employee is capable of performing.

K. Failing to meet established standards of performance including either qualitative or quantitative standards.

FOR CITY SERVICES VISIT | CALL
DenverGov.org | 311

*Protecting the Present & Building the Future*
Accountability, Innovation, Empowerment, Performance, Integrity,
Diversity, Teamwork, Respect, Excellence, Safety

EXHIBIT 5        AGENCY EXHIBIT 2-1        Johnson, Eric
000008

As a Heavy Equipment Operator, your Performance Enhancement Program Report for evaluation period 01/01/2012 through 12/31/2012 states in relevant part:

**Working Environment (Duty 1 Outcome 2)**

Description:

May act as lead person over assigned crew. Ensures a safe working environment for yourself, other employees and citizens.

Knows and follows all SOPS (Standard Operating Procedures) as they relate to safety, including PPE's (Personal Protective Equipment), safe driving practices, servicing and inspection of vehicle, accidents and emergencies.

**Teamwork/Communication/Professionalism (Duty 1 Outcome 4)**

Description:

Provides Denver residents with highest level of service and professionalism possible.

L. Failure to observe written departmental or agency regulations, policies or rules.

<u>Public Works Rules and Regulations Governing the Preparation, Storage, and Collection of Household and Yard Rubbish</u>. Adopted Pursuant to Article II of the Charter of the City and County of Denver and Section 2-91 et seq. of the Revised Municipal Code

H. Non-collectible items – hazardous waste, oil, sod, soil, building material, demolition debris, branches over 4 (four) feet in length, or any other material identified by an authorized representative.

Y. Conduct which violates the Rules, the City Charter, the Denver Revised Municipal Code, Executive orders, or any other applicable legal authority.

Charter of the City and County of Denver
Chapter 48, Solid Waste
Article IV – Rubbish
Section 48-44 Illegal Dumping

**Sec. 48-44. Illegal dumping.**

(a)

It shall be unlawful for any person, in disposing of or removing any trash to dump, litter, deposit or cause to be deposited on any public or private property other than those premises lawfully designated for waste storage, treatment or disposal; provided, however, that it shall be lawful to deposit bits of waste paper and the like in

- 2 -

**AGENCY EXHIBIT 2-2**

Johnson, Eric
000009

(b) trash containers maintained throughout the city by the manager of public works and any authorized representatives.

(c) It shall be unlawful to dump, litter, deposit or cause to be deposited any trash except in accordance with the rules and regulations promulgated by the manager of public works.

The manager of public works shall have the authority to prescribe rules and regulations to implement and enforce this chapter, including, but not limited to, the following:

(1) Prohibitions of certain materials altogether, such as food processing wastes, waste petroleum products, etc.;

(2) Designation and use of trash containers;

(3) Administrative citations for illegal dumping or unlawful disposal.

Z. Conduct prejudicial to the good order and effectiveness of the department or agency, or conduct that brings disrepute on or compromises the integrity of the City

You are employed by the Department of Public Works, Solid Waste Division with the City and County of Denver (CCD), as a Heavy Equipment Operator (HEO). Your original hire with CCD was June 16, 2001. You have been employed in the HEO position since July 10, 2011. According to your Career Service job specification and your current Performance Enhancement Plan (PEP), the general duties of your position include: Operates large, heavy industrial equipment which requires a substantial degree of monitoring and/or coordination of the working attachments in order to vary operations and deal with differing conditions in construction, earthmoving, and/or other work related duties. Operates various pieces of equipment characterized by multiple axles and a tractor/trailer combination to haul heavy equipment, ground and waste materials, and/or other items to designated sites, loads/unloads and secures equipment and/or materials for proper transportation, and ensures the safe and efficient operation of equipment and a variety of work related tools.

The following is a summary but not an exhaustive description of the alleged misconduct for which discipline is being contemplated:

On the morning of May 28, 2013, your supervisor, Richard Villa, Operations Supervisor, instructed one of your co-workers to use truck BH23 with attached trailer BZ15 to haul trash to the landfill. When the employee went to pre-trip this vehicle, he noticed BZ 15 had two flat tires. He reported this information to Mr. Villa. On the afternoon of May 28, 2013, after the tires were repaired, Mr. Villa instructed another co-worker to fill up BH23. According to Mr. Villa, this vehicle should have been empty. When the co-worker performed a pre-trip he noticed that the board scale for trailer BZ15 read 83. This was above the normal full load of 55. The employee climbed the ladder to see what was in the trailer and observed roofing material. He notified Mr.

- 3 -

Villa who then climbed up the ladder and took pictures of the material in the trailer. Mr. Villa instructed the employee to take the vehicle to the landfill to dump it because it has a tipper trailer and that is the only way to dump it. After the employee returned from dumping the trailer, he informed Mr. Villa that at the time of the dump, the weight registered at 29.1 tons. The trailer had been illegally filled beyond the legal capacity with roofing material. The legal weight capacity is 20 tons.

Mr. Villa contacted Dave Peachey, Field Superintendent, to notify him of the above facts. They both made arrangements to view video footage of the Cherry Creek Transfer Station. Mr. Villa and Mr. Peachey viewed footage of activities beginning Friday, May 24, 2013 from 4:00 p.m. to 8:15 p.m. The video revealed the following activities on May 24, 2013:

- 5:29 p.m. Video shows a co-worker walking over to the key box, turning the gate to hold open and entering the fleet building.
- 5:32 p.m. A co-worker is observed exiting the Fleet Building and walking over to where the transfer tractor/trailers are parked.
- 5:33 p.m. A transfer tractor/trailer is moved off the line and is seen heading toward the transfer station chute.
- 5:53 p.m. Truck #1 white truck (private vehicle) with wooden side enters the transfer station and heads to the Chute area.
- 6:00 p.m. Truck #1 white truck is seen exiting the transfer station. The truck is empty and the wooden sides have been removed.
- 6:26 p.m. Truck #2 dark gray truck enters with a trailer that appears full and is covered with a tarp.
- 6:32 p.m. Truck #3 – a light gray truck is seen entering the Cherry Creek Transfer Station. It does not have a load but appears to have metal tools or metal materials in the bed.
- 6:43:30 p.m. A truck is seen backed into side one of the chute. It is not clear if this is truck #2 or #3.
- 6:46 p.m. A truck is seen pulling out of side 1 of the chute. It is not clear which truck this is.
- 6:47 p.m. Truck #2 is seen driving around the yard with a trailer but turns around and goes back to chute area.
- 6:55 p.m. Truck #2 leaves the station without a trailer.
- 6:59 p.m. You and a co-worker are observed walking towards the main gate. At 7:02 p.m. video shows truck #2 entering the transfer station with a trailer attached. It drives right by you and your co-worker. The trailer has a tarp on it and looks full. It appears that you left the facility at approximately 7:04 p.m.

The video shows that a total of five private trailers were dumped between the hours of 5:29 p.m. and 8:11 p.m. (one pick up did three runs). The video is clear; both Mr. Villa and Mr. Peachey were able to identify you. You were present during the activity described above.

You were asked on May 29, 2013 by your supervisor, Mr. Villa to submit a statement regarding your activities after clocking out on May 24, 2013. Your statement, dated May 29, 2013 reads:

"On May 24, between 5:00 p.m. and 8:00 p.m. I was sitting up on the hill talking to some of my fellow coworkers. We were just up there talking about old times when we started in the City and where we began and exactly how hard it was to get to where we are now."

AGENCY EXHIBIT 2-4

Johnson, Eric
000011

This is not a truthful statement as the video footage clearly shows you on site between 6:59 p.m. and 7:04 p.m. on May 24, 2013. In fact, at 6:59 p.m. the video shows a private vehicle, Truck #2, driving directly past you. You failed to disclose this information in your statement. You are also observed on the video at 6:59 p.m. walking with a co-worker towards the main gate. After submitting this statement, you were advised by Charlotte Pitt, Manager 1, that there was video footage from this evening and you were asked if you wanted to update your statement. You declined to do so.

You are schedule to work four ten-hours days, Tuesday through Friday, 6:30 a.m. to 5:00 p.m. A review of your KRONOS records for May 24, 2013 shows that you clocked out at 4:53 p.m. You are not authorized to be on site after work hours. In addition, you are fully aware that private dumping is not allowed at the Cherry Creek Transfer station. This rule has been communicated and discussed many times with staff at numerous camp meetings.

Your activities on May 24, 2013 were illegal because you allowed unauthorized individuals to enter the Cherry Creek Transfer Station yard and to illegally dump approximately thirty (30) tons of material into a city trailer, vehicle BZ15. These actions also presented a clear safety threat, because you were observed on site with others without proper safety equipment. In addition, vehicle BZ15 sustained damage. Two of the trailer's tires were blown out because of the excessive weight of the load resulting in damages of approximately $1,000.

Your disciplinary history includes:

March 6, 2002        verbal warning              chargeable accidents

The purposes of this meeting are to allow you to correct any errors in our information or facts, to tell your side of the story and to present any mitigating information as to why possible disciplinary action should not be taken. You are entitled to have a representative of your own choosing present at this meeting.

You may present a written and/or verbal statement at your pre-disciplinary meeting. Your statement, prior disciplinary history and work record will be given full consideration before a final decision is made regarding any disciplinary action. Please note, no decision regarding any action has been made nor will be made until the pre-disciplinary meeting has been completed.

If you and/or your representative fail to appear at the scheduled time, I may consider this failure a waiver of your appearance.

AGENCY EXHIBIT 2-5

Johnson, Eric
000012

Please be advised that you are not to take any retaliatory action against anyone as a result of this contemplation for discipline letter. If any such action is taken, further discipline may be contemplated and taken, up to and including dismissal.

Respectfully,

Lars Williams
Director, Solid Waste

Enclosure(s): Pictures from Video Footage from Cherry Creek Transfer Station dated May 24, 2013

cc: Charlotte Pitt Manager 1, Solid Waste
Richard Villa, Operations Supervisor, Cherry Creek Transfer Station
Kathy Billings, Human Resources
Department/Agency Personnel File

AGENCY EXHIBIT 2-6

Johnson, Eric
000013