

**Denver Public Works**
Solid Waste Management

2000 W. 3rd Ave.
P: 303.446.3557
F: 303.446.3527
www.denvergov.org/trash
Denver, CO 80223
www.denvergov.org/dpw

July 5, 2013

Mr. Eric Johnson
2074 S. Oswego Wy. #201
Aurora, CO 80014
Employee ID 115583

RE: Notification of Dismissal Disciplinary Action

Dear Mr. Johnson:

This is notification that you are being dismissed from your employment with the City and County of Denver for engaging in misconduct in violation of the Career Service Rules. Your last day of employment with the City and County of Denver will be Friday, July 5, 2013.

<u>Career Service Rule 16-60, Discipline and Dismissal</u>

The following may be cause for discipline or dismissal of a Career Service employee:

B.  Carelessness in performance of duties and responsibilities.

C.  1. Theft, destruction, or neglect in the use of City property or property of any agency or entity having a contract with the City; or

   D.  Unauthorized operation or use of any vehicles, machines, or equipment of the City, or of any entity having a contract with the City, including, but not limited to, the unauthorized use of the internet, e-mail or telephones.

E.  Any act of dishonesty, which may include, but is not limited to:
   3. Lying to superiors or falsifying records with respect to official duties, including work duties, disciplinary actions, or false reporting of work hours.

J.  Failing to comply with the lawful orders of an authorized supervisor or failing to do assigned work which the employee is capable of performing.

K.  Failing to meet established standards of performance including either qualitative or quantitative standards.



*Protecting the Present & Building the Future*
Accountability, Innovation, Empowerment, Performance, Integrity,
Diversity, Teamwork, Respect, Excellence, Safety

EXHIBIT 8

AGENCY EXHIBIT 1-1

Johnson, Eric
000001

As a Heavy Equipment Operator, your Performance Enhancement Program Report for evaluation period 01/01/2012 through 12/31/2012 states in relevant part:

**Working Environment (Duty 1 Outcome 2)**

Description:

May act as lead person over assigned crew. Ensures a safe working environment for yourself, other employees and citizens.

Knows and follows all SOPS (Standard Operating Procedures) as they relate to safety, including PPE's (Personal Protective Equipment), safe driving practices, servicing and inspection of vehicle, accidents and emergencies.

**Teamwork/Communication/Professionalism (Duty 1 Outcome 4)**

Description:

Provides Denver residents with highest level of service and professionalism possible.

L.  Failure to observe written departmental or agency regulations, policies or rules.

**Public Works Rules and Regulations Governing the Preparation, Storage, and Collection of Household and Yard Rubbish.** *Adopted Pursuant to Article II of the Charter of the City and County of Denver and Section 2-91 et seq. of the Revised Municipal Code*

H.  Non-collectible items – hazardous waste, oil, sod, soil, building material, demolition debris, branches over 4 (four) feet in length, or any other material identified by an authorized representative.

Y.  Conduct which violates the Rules, the City Charter, the Denver Revised Municipal Code, Executive orders, or any other applicable legal authority.

**Charter of the City and County of Denver**
**Chapter 48, Solid Waste**
 **Article IV – Rubbish**
**Section 48-44 Illegal Dumping**

**Sec. 48-44. Illegal dumping.**

(a)

It shall be unlawful for any person, in disposing of or removing any trash to dump, litter, deposit or cause to be deposited on any public or private property other than those premises lawfully designated for waste storage, treatment or disposal; provided, however, that it shall be lawful to deposit bits of waste paper and the like in

**AGENCY EXHIBIT 1-2**

Johnson, Eric
000002

(b)

trash containers maintained throughout the city by the manager of public works and any authorized representatives.

It shall be unlawful to dump, litter, deposit or cause to be deposited any trash except in accordance with the rules and regulations promulgated by the manager of public works.

(c)

The manager of public works shall have the authority to prescribe rules and regulations to implement and enforce this chapter, including, but not limited to, the following:

(1)

Prohibitions of certain materials altogether, such as food processing wastes, waste petroleum products, etc.;

(2)

Designation and use of trash containers;

(3)

Administrative citations for illegal dumping or unlawful disposal.

Z.  Conduct prejudicial to the good order and effectiveness of the department or agency, or conduct that brings disrepute on or compromises the integrity of the City

You are employed by the Department of Public Works, Solid Waste Division with the City and County of Denver (CCD), as a Heavy Equipment Operator (HEO). Your original hire with CCD was June 16, 2001. You have been employed in the HEO position since July 10, 2011. According to your Career Service job specification and your current Performance Enhancement Plan (PEP), the general duties of your position include: Operates large, heavy industrial equipment which requires a substantial degree of monitoring and/or coordination of the working attachments in order to vary operations and deal with differing conditions in construction, earthmoving, and/or other work related duties. Operates various pieces of equipment characterized by multiple axles and a tractor/trailer combination to haul heavy equipment, ground and waste materials, and/or other items to designated sites, loads/unloads and secures equipment and/or materials for proper transportation, and ensures the safe and efficient operation of equipment and a variety of work related tools.

The following is a summary but not an exhaustive description, of the facts and circumstances surrounding the misconduct on which this discipline is based:

On the morning of May 28, 2013, your supervisor, Richard Villa, Operations Supervisor, instructed one of your co-workers to use truck BH23 with attached trailer BZ15 to haul trash to the landfill. When the employee went to pre-trip this vehicle, he noticed BZ15 had two flat tires. He reported this information to Mr. Villa. On the afternoon of May 28, 2013, after the tires were repaired, Mr. Villa instructed another co-worker to fill up BH23. According to Mr. Villa, this vehicle should have been empty. When the co-worker performed a pre-trip he noticed that the board scale for trailer BZ15 read 83. This reading was above the normal full load of 55. The employee climbed the ladder to see what was in the trailer and observed roofing material. He

**AGENCY EXHIBIT 1-3**

Johnson, Eric
000003

notified Mr. Villa, who climbed the ladder and took pictures of the material in the trailer. Mr. Villa instructed the employee to take the vehicle to the landfill to dump it because it has a tipper trailer and that is the only way to dump it. After the employee returned from dumping the trailer, he informed Mr. Villa that at the time of the dump, the weight registered at 29.1 tons. The trailer had been illegally filled beyond the legal capacity with roofing material. The legal weight capacity is 20 tons.

Mr. Villa contacted Dave Peachey, Field Superintendent, to notify him of the above facts. They made arrangements to view video footage of the Cherry Creek Transfer Station. Mr. Villa and Mr. Peachey viewed footage of activities beginning Friday, May 24, 2013 from 4:00 p.m. to 8:15 p.m. The video revealed the following activities on May 24, 2013:

- 5:29 p.m. Video shows a co-worker walking over to the key box, turning the gate to hold open and entering the fleet building.
- 5:32 p.m. A co-worker is observed exiting the Fleet Building and walking over to where the transfer tractor/trailers are parked.
- 5:33 p.m. A transfer tractor/trailer is moved off the line and is seen heading toward the transfer station chute.
- 5:53 p.m. Truck #1 white truck (private vehicle) with wooden side enters the transfer station and heads to the Chute area.
- 6:00 p.m. Truck #1 white truck is seen exiting the transfer station. The truck is empty and the wooden sides have been removed.
- 6:26 p.m. Truck #2 dark gray truck enters with a trailer that appears full and is covered with a tarp.
- 6.32 p.m. Truck # 3 light gray truck is seen entering the Cherry Creek Transfer Station. It does not have a load but appears to have metal tools or metal materials in the bed.
- 6.43:30 p.m. A truck is seen backed into side one of the chute. It is not clear if this is truck #2 or #3.
- 6.46 p.m. A truck is seen pulling out of side 1 of the chute. It is not clear which truck this is.
- 6.47 p.m. Truck #2 is seen driving around the yard with a trailer but turns around and goes back to chute area.
- 6.55 p.m. Truck #2 leaves the station without a trailer.
- 6:59 p.m. **You and a co-worker are observed walking towards the main gate. At 7:02 p.m. video shows truck #2 entering the transfer station with a trailer attached. It drives right by you and your co-worker. The trailer has a tarp on it and looks full. It appears that you left the facility at approximately 7:04 p.m.**

The video shows that a total of five private trailers were dumped between the hours of 5:29 p.m. and 8:11 p.m. (one pick up did three runs). The video is clear; both Mr. Villa and Mr. Peachey were able to identify you. You were present during the activity described above.

You were asked on May 29, 2013 by your supervisor, Mr. Villa, to submit a statement regarding your activities after clocking out on May 24, 2013. Your statement, dated May 29, 2013 reads:

*"On May 24, between 5:00 p.m. and 8:00 p.m. I was sitting up on the hill talking to some of my fellow coworkers. We were just up there talking about old times when we started in the City and where we began and exactly how hard it was to get to where we are now."*

- 4 -

**AGENCY EXHIBIT 1-4**

Johnson, Eric
000004

This is not a truthful statement. The video footage clearly shows you on site between 6:59 p.m. and 7:04 p.m. on May 24, 2013. In fact, at 6:59 p.m. the video shows a private vehicle, Truck #2, driving directly past you. You failed to disclose this information in your statement. You are also observed on the video at 6:59 p.m. walking with a co-worker toward the main gate. After submitting this statement, you were advised by Charlotte Pitt, Manager 1, that there was video footage from this evening and you were asked if you wanted to update your statement. You declined to do so.

You are scheduled to work four ten-hour days, Tuesday through Friday, 6:30 a.m. to 5:00 p.m. A review of your KRONOS records for May 24, 2013 shows that you clocked out at 4:53 p.m. You are not authorized to be on site after work hours. In addition, you are fully aware that private dumping is not allowed at the Cherry Creek Transfer station. This rule has been communicated and discussed many times with staff at numerous camp meetings.

Your activities on May 24, 2013 were illegal because you allowed unauthorized individuals to enter the Cherry Creek Transfer Station yard and to illegally dump approximately thirty (30) tons of material into a city trailer, vehicle BZ15. These actions also presented a clear safety threat, because you were observed on site with others without proper safety equipment. In addition, vehicle BZ15 sustained damage. Two of the trailer's tires were blown out because of the excessive weight of the load resulting in damages of approximately $1,000.

Your disciplinary history includes:

| | | |
|---|---|---|
| March 6, 2002 | verbal warning | chargeable accidents |
| July 15, 2002 | verbal warning | chargeable accident |
| November 29, 2007 | verbal warning | chargeable accident |
| June 6, 2013 | verbal warning | tardiness |

The pre-disciplinary meeting was held on June 20, 2013 in my office. Present at the meeting were Lars Williams, Director Solid Waste Management; Mike Lutz, Manager 1; Charlotte Pitt, Manager 1; Richard Villa, Operations Supervisor; and Kathy Billings, Office of Human Resources. The purposes of this meeting were to allow you to correct any errors in our information or facts, to tell your side of the story and to present any mitigating information as to why possible disciplinary action should not be taken. You attended this meeting without a representative and acknowledged you had the opportunity to have a representative at the meeting but stated you chose not to have on present.

You presented a verbal statement at your pre-disciplinary meeting. In your statement, you denied having any knowledge of the activities taking place that evening. You stated that you did not hear the loader start up and did not see the trucks. You acknowledged that you did see one truck come in, but you did not know the purpose or whose truck it was. When asked why you did not share this information in your statement, you said that you felt you were only responsible for you do and did not feel you needed it to report the activity. You did not provide an explanation as to why you were on-site after work hours. You stated that this is the first time in twelve (12) years that you had been on the work site after your regular scheduled work hour. Your statement, prior disciplinary history and work record were given full consideration before a final decision was made regarding this disciplinary action.

You may appeal this discipline in accordance with Career Service Rule 19, Appeals. You may also initiate dispute resolution pursuant to Career Service Rule 18, Dispute Resolution. Please

- 5 -

**AGENCY EXHIBIT 1-5**

Johnson, Eric
000005

note, however, that pursuit of dispute resolution will not suspend the time limitation for filing an appeal.

Please be advised that in accordance with <u>Career Service Rule 3-32, B, 5, Disqualification of Applicants and Candidates</u> and <u>Career Service Rule 16-75, C, Procedure for Dismissal</u>, employees dismissed from the Career Service are not eligible to be assessed for open jobs and are not eligible for future employment within the Career Service for a minimum of five (5) years after the date of dismissal.

Respectfully,

*Lars Williams*

Lars Williams
Director, Solid Waste

cc:   Michael Lutz, Manager 1, Solid Waste
      Charlotte Pitt Manager 1, Solid Waste
      Richard Villa, Operations Supervisor, Cherry Creek Transfer Station
      Kathy Billings, Office of Human Resources
      Department/Agency Personnel File
      OHR Records

## CERTIFICATE OF SERVICE

I hereby certify that I have (hand delivered / sent by first class mail) a true and correct copy of the foregoing **NOTICE OF DISMISSAL DISCIPLINARY ACTION** on the ___3___ day of ___July___, _2013_ to:

Eric Johnson
2074 S. Oswego Wy #201
Aurora, CO  80014

___CHARLOTTE PITT / [signature] / Manager 1___
Name/Signature/Title

- 7 -

**AGENCY EXHIBIT 1-7**

Johnson, Eric
000007