IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02095-PAB-KMT

ERIC JOHNSON,

      Plaintiff,

v.

DEPARTMENT OF PUBLIC WORKS, SOLID WASTE MANAGEMENT,
CITY AND COUNTY OF DENVER, a municipal corporation,
KATHY BILLINGS, individually and in her representative capacity,
MIKE LUTZ, individually,
LARS WILLIAMS, individually,
CHARLOTTE PITT, individually,
RICHARD VILLA, individually,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants Kathy Billings, Mike Lutz, Lars Williams, Charlotte Pitt, and Richard Villa's Motion to Dismiss Second Claim for Relief [Docket No. 35] and defendants' Motion for Summary Judgment [Docket No. 56].  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND[1]**

Plaintiff alleges that the City and County of Denver (the "City") unlawfully terminated him because of his race in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. §§ 1981, 1981a, and 1983. Docket No. 31 at 14-15.  Plaintiff Eric Johnson worked for the Solid Waste

_____

[1]The following facts are undisputed unless otherwise indicated.

Management Division ("SWM") of the Department of Public Works for the City and

County of Denver (the "City") from June 16, 2001 until his termination on July 5, 2013.

Docket No. 56 at 3, Statement of Undisputed Material Fact ("SUMF") 1.  Plaintiff was

promoted three times between 2001 and 2008.  *Id*., SUMF 2.  At all relevant times,

plaintiff's immediate supervisor was defendant Richard Villa, Operations Supervisor.  *Id*.

at 4, SUMF 9.  Mr. Villa reported to defendant Charlotte Pitt, Manager.  *Id*., SUMF 10.

Ms. Pitt reported to defendant Lars Williams, Director of SWM.  *Id*., SUMF 11.

Defendant Mike Lutz held the same position as Ms. Pitt, Manager, and reported directly

to Mr. Williams.  *Id*., SUMF 12.  At all relevant times, plaintiff did not report to Mr. Lutz

and was not in Mr. Lutz' chain of command.  *Id*., SUMF 13.

Plaintiff was among 20 to 25 applicants for the SWM mentorship program for

2011/2012.  *Id*., SUMF 14.[2]  Candidates submitted applications which included

evaluations, safety records, and answers to written interview questions.  *Id*., SUMF 15.

Passing a supervisor exam was not a prerequisite for entry into the program.  *Id*., SUMF

16; Docket No. 68-5 at 5 (Pitt Depo., 80:10-11).  The SWM mentorship program

provided guidance and training for participants interested in being promoted to

supervisor and provided coverage for Operations Supervisors while on vacation.

Docket No. 56 at 4, SUMF 17.  A three-member panel, including Ms. Pitt, scored all

applications.  *Id*. at 5, SUMF 20.  Based upon the scoring method used by the three-

---

[2]Plaintiff states that this fact is disputed because there were 19 applicants in
2013.  Docket No. 68 at 2, ¶ 14.  It is unclear how plaintiff's statement, or the exhibit
provided in support, which contains no date, contradicts defendants' statement of fact,
and therefore the Court finds no dispute.

member panel, ten participants and five alternates scored higher than plaintiff. *Id*., SUMF 22. Plaintiff was denied entry into the SWM mentorship program. *Id*., SUMF 23.

At the Cherry Creek Station (the "Station"), trash from garbage trucks is dumped and transferred into tractor-trailers for transport to landfills. *Id*., SUMFs 24-25. Generally, once trash is dumped on the floor, a front-end loader pushes the trash through a chute and it drops through a floor onto the truck below. *Id*., SUMF 26; *see* Docket No. 68-3 at 5 (Johnson Depo., 221:5-10). When trash is deposited into trailers, regardless of whether it is done directly or through the use of a front end-loader, it is noisy, and plaintiff would hear it. Docket No. 56 at 5, SUMFs 27-29. There is a bad odor around the trash chute, and plaintiff has seen mice and/or rats near the transfer chute. *Id*. at 6, SUMFs 30-31. Behind the trash chute building there were benches. *Id*., SUMF 32.

On May 24, 2013, the Friday leading into a four-day Memorial Day weekend, plaintiff was based at the Station. *Id*. at 5-6, SUMFs 24, 33. Plaintiff clocked out at 4:53 p.m., but stayed at the station until around 7:04 p.m. *Id*. at 6, SUMF 35. It was the first time in twelve years of employment with the City that plaintiff had stayed on the premises after clocking out. *Id*., SUMF 36. Between 4:00 p.m. and 7:00 p.m., plaintiff and co-worker Darrell Boone were in close proximity to the trash chute building. *Id*., SUMF 33. Plaintiff was instructed to report suspicious activity and violations of which he became aware. *Id*., SUMF 34.

On Tuesday, May 28, 2013, SWM employees discovered a trailer that was partially filled with 9.1 tons of roofing material. *Id*., SUMF 37; Docket No. 68 at 3, ¶ 37.

Roofing material is not acceptable residential refuse and is not collectible.  Docket No. 56 at 6, SUMF 40; Docket No 68 at 4, ¶ 40.  Mr. Villa informed David Peachey, Field Superintendent, about the incident, and Mr. Villa and Mr. Peachey viewed video of the site from May 24, 2013 through the Memorial Day weekend.  Docket No. 56 at 6, SUMFs 41-42.  The video revealed plaintiff was on site on May 24, 2013 until 7:04 p.m.  Docket No. 56 at 7, SUMF 43.  The video showed that, on May 24, 2013, Daniel Abeyta opened the gate at 5:29 p.m. and walked to the parked trailers at 5:32 p.m.  *Id.*, SUMF 44.  At 5:33 p.m., a tractor trailer is seen heading toward the transfer station chute.  *Id*.  The video also showed three trucks, some with trailers, entering and exiting the station between 5:53 p.m. and 7:02 p.m.  *Id.*, SUMF 45.  Chris Reed, an on-call employee, drove one of the trucks.  *Id.*, SUMF 46.  Mr. Reed could not be clearly seen on video.  *Id.*, SUMF 47.

On May 29, 2013, after having watched the video, Mr. Peachey asked plaintiff, Mr. Abeyta, and Mr. Boone to write statements about their activities on May 24, 2013 between 5:00 p.m. and 8:00 p.m.  *Id.*, SUMF 48.  Mr. Boone and Mr. Abeyta lied in their statements, claiming they left the station shortly after clocking out at 4:53 p.m.  *Id.*, SUMF 49.  Plaintiff stated that he was on the hill immediately behind the chute building talking with co-workers.  *Id.*, SUMF 50.  Plaintiff did not write in his statement that trucks entered and exited the premises; that the front-end loader was operating after-hours; that a semi-tractor trailer moved under the chute after hours; that trash was dumped into the chute building after hours; that trash was moved from the chute building into the semi-tractor trailer below; that a truck with a full trailer entered the Station at

4

approximately 7:00 p.m.; that plaintiff and Mr. Boone caught a trailer that came unhitched from a truck exiting the station at approximately 7:00 p.m. and that Mr. Reed was driving that truck; or that the front gate was open when plaintiff and Mr. Boone left after 7:00 p.m. *Id*. at 7-8, SUMF 54.  Ms. Pitt told plaintiff that she saw video from May 24, 2013 and asked if he wanted to revise his statement. *Id*. at 8, SUMF 55.  Plaintiff declined. *Id*.

Mr. Abeyta is Hispanic. *Id* at 7, SUMF 51.  Mr. Boone is Black. *Id*., SUMF 52. Plaintiff is Black. *Id*.  Mr. Reed is White. *Id*., SUMF 53.

Plaintiff received a pre-disciplinary letter signed by Mr. Williams regarding his activities on May 24, 2013. *Id*. at 8, SUMF 56.  Plaintiff's pre-disciplinary meeting was on June 20, 2013, at which time plaintiff was afforded an opportunity to tell his side of the story; plaintiff denied any knowledge of illegal activity. *Id*., SUMFs 57, 59.  Ms. Pitt, Mr. Villa, Mr. Williams, and Ms. Billings attended plaintiff's pre-disciplinary meeting. *Id*., SUMF 58.

On July 5, 2013, plaintiff's employment with SWM was terminated.  Docket No. 56 at 8, SUMF 61.  Messrs. Boone's and Abeyta's employment with SWM was also terminated.[3] *Id*., SUMF 62.  Mr. Williams had sole authority to terminate plaintiff's employment with SWM. *Id*. at 9, SUMF 63.  Plaintiff's race did not play any role in Mr. Williams' decision to terminate his employment. *Id*., SUMF 64.  Plaintiff never complained of race discrimination to the City or to any court or agency before his termination. *Id*., SUMF 65.

---

[3]Mr. Reed was terminated for an unrelated illegal dumping incident on June 14, 2013.  Docket No. 56 at 8, SUMF 60.

Plaintiff appealed his termination through the City's administrative process.  *Id*., SUMF 66.   A hearing was held before a hearing officer on October 16 and 18, 2013. *Id*.  On December 2, 2013, the hearing officer issued a decision affirming plaintiff's termination for dishonesty.  *Id*., SUMF 67.  The hearing officer dismissed plaintiff's race discrimination claim because he failed "to prove African-American employees who were dismissed were both treated disparately and were similarly situated to non-African-American employees who were not dismissed" and because he did not dispute that he was not selected for the SWM mentorship program because he scored lower than the top fifteen applicants that were chosen.  *Id*., SUMF 67.  Plaintiff did not appeal the hearing officer's December 2, 2013 decision.  *Id*., SUMF 68.

On July 28, 2014, plaintiff filed his suit against defendants.  Docket No. 1.  On March 9, 2015, defendants moved to dismiss plaintiff's second claim for relief pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Docket No. 35.  On August 24, 2015, defendants moved for summary judgment on all of plaintiff's claims.  Docket No. 56.

## II.  ANALYSIS

### A.  Defendants' Motion to Dismiss

Defendants argue that plaintiff's second claim for relief should be dismissed "because well established precedent holds that no remedy lies against a state actor for violation of § 1981."  Docket No. 35 at 2.

#### 1.  Standard of Review

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over plaintiff's claims for relief asserted in the complaint.  Rule

12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  To the extent defendants attack the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."  *SK Finance SA v. La Plata Cty.*, 126 F.3d 1272, 1275 (10th Cir. 1997).  "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances."  *Id.*  Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

### 2.  Fed. R. Civ. P. 12(b)(1)

Despite predicating their motion in part on Rule 12(b)(1), defendants make no argument and cite no authority for why this court lacks subject matter jurisdiction over plaintiff's second claim for relief.  Section 1981 is a federal statute.  As a result, the Court has jurisdiction over plaintiff's second claim.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### 3.  Fed. R. Civ. P. 12(b)(6)

Defendants argue that plaintiff's second claim for relief is legally insufficient because plaintiff's sole remedy for violations of § 1981 by state actors is a § 1983

claim.  Docket No. 35 at 3; Docket No. 41 at 2.  In support of this position, defendants

cite *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), *Bolden v. City of Topeka*, 441

F.3d 1129 (10th Cir. 2006), and *OneSource Commercial Prop. Servs., Inc. v. City and

Cty. of Denver*, 535 F. App'x 740 (10th Cir. 2013) (unpublished).  Docket No. 35 at 3;

Docket No. 41 at 2.  In *Jett*, the Supreme Court held that a "school district may not be

held liable for its employees' violation of the rights enumerated in § 1981 under a theory

of *respondeat superior*."  491 U.S. at 738.  The Court also held that § 1981 could be

enforced against private actors.  *Id*. at 731-32.  In *Bolden*, the Tenth Circuit held that,

pursuant to *Jett*, the plaintiff could only bring his § 1981 claim against the city under

§ 1983.  The decisions in *Jett* and *Bolden* thus considered whether § 1981 claims may

properly be brought against a municipal entity – not a government employee in her

individual capacity.  In *OneSource*, 535 F. App'x at 748, plaintiff brought claims of race

and sex discrimination against two defendants in their individual capacities pursuant to

§ 1981 and against the city pursuant to § 1983.  Contrary to defendants' suggestion,

the Tenth Circuit did not affirm the trial court's dismissal of plaintiff's § 1981 claims on

the grounds that they could only be brought under § 1983, but rather dismissed them

because the plaintiff failed to present sufficient evidence to survive summary judgment.

*Id*. at 748-49.

Plaintiff does not bring his second claim for relief against the City or against

individuals in their official capacities, but rather against the named individuals in their

individual capacities.  Docket No. 31 at 14.  Under § 1981, plaintiff may sue individuals

under certain conditions.  "In employment discrimination cases, § 1981 requires that

there be an underlying employment contract between the plaintiff and his . . . employer,

but there is no requirement that the plaintiff must also be in privity of contract with a

supervisor or other co-employee before the latter can be sued individually under

§ 1981." *Flores v. City and Cty. Of Denver*, 30 F. App'x 816, 819 (10th Cir. 2002)

(unpublished).  "[A]n individual defendant can be held liable under § 1981 if the

individual defendant was personally involved in the discriminatory conduct." *Id*.  The

second claim contains allegations against the individual defendants regarding their

involvement in the alleged discriminatory conduct.  *See, e.g.,* Docket No. 31 at 14,

¶¶ 133, 134.  Moreover, defendants do not challenge the sufficiency of plaintiff's factual

allegations in support of his second claim for relief.  The Court finds that plaintiff has

stated a claim of a violation of § 1981 against the individual defendants.

### B. <u>Summary Judgment</u>

#### 1. *Standard of Review*

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary

judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### 2. *Analysis*

In his first claim, Mr. Johnson asserts a claim of disparate treatment against the City under Title VII. Docket No. 31 at 14. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e-2(a)(1).  In his second claim, as noted above, Mr.

Johnson asserts a claim against Ms. Billings, Mr. Lutz, Mr. Williams, Ms. Pitt, and Mr.

Villa in their individual capacities, pursuant to 42 U.S.C. § 1981, which "prohibits racial

discrimination in 'the making, performance, modification, and termination of contracts,

and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship.'"  Docket No. 31 at 14; *Reynolds v. Sch. Dist. No. 1, Denver, Colorado*, 69

F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981).  In his third claim, Mr.

Johnson asserts a 42 U.S.C. § 1983 claim against all defendants for violation of his

rights under Equal Protection Clause of the Fourteenth Amendment.  Docket No. 31 at

15.  The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o

State shall . . . deny to any person within its jurisdiction the equal protection of the

laws."  U.S. Const. Amend. XIV.  The Equal Protection Clause protects against

disparate treatment based on race or gender and is violated when the government

treats someone differently than another who is similarly situated.  *City of Cleburne v.*

*Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399,

1406 (10th Cir. 1996).  Plaintiff includes a *Monell* municipal liability allegation within his

§ 1983 claim against the City, alleging that "SWM had a longstanding custom, policy,

and practice of treating its African American employees less favorably than its

Caucasian and Hispanic employees."  Docket No. 31 at 16, ¶ 147; *see Monell v. Dep't*

*of Social Services of the City of New York*, 436 U.S. 658, 694 (1978); *Myers v.*

*Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998).

The same standards and burdens apply to claims brought under 42 U.S.C.
§ 1981, § 1983, and Title VII.  *See Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir.
2005) (recognizing that *McDonnell Douglas* burden shifting applies in §§ 1981, 1983
and Title VII cases)*; Carney v. City and Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir.
2008); *Preston v. Atmel Corp.*, 2010 WL 194941, at *4, n. 15 (citing *Aramburu v. Boeing
Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997)).  Accordingly, the Court need not
consider plaintiff's claims separately.

Mr. Johnson has pointed to no direct evidence of race discrimination.  *See*
Docket No. 63 at 10.  The Court, therefore, applies the burden-shifting framework
outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to all of plaintiff's
race discrimination claims.  *Baca*, 398 F.3d 1210, 1218 n.3; *Garrett v. Hewlett Packard
Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  First, plaintiff must make out a prima facie
case of employment discrimination.  *Garrett*, 305 F.3d at 1216.  "[A] prima facie case of
discrimination must consist of evidence that (1) the victim belongs to a protected class;
(2) the victim suffered an adverse employment action; and (3) the challenged action
took place under circumstances giving rise to an inference of discrimination."  *E.E.O.C.
v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel
Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).  If Mr. Johnson successfully makes out a
prima facie case, the burden shifts to defendants to offer a legitimate, nondiscriminatory
reason for the adverse action.  *Garrett*, 305 F.3d at 1216.  If defendants can offer such
a reason, Mr. Johnson must provide evidence that race was "a determinative factor in

the defendant's employment decision, or show that the defendant's explanation for its actions was merely pretext." *Id*.

Defendants do not dispute that Mr. Johnson is a member of a protected class or that termination constitutes an adverse employment action. Instead, defendants focus on the third requirement of a prima facie case, evidence showing that plaintiff's termination occurred under circumstances giving rise to an inference of discrimination. Plaintiff appears to make two arguments to establish that his termination took place under circumstances giving rise to an inference of discrimination: (1) SWM has a pattern or practice of racial discrimination, Docket No. 63 at 5, and (2) the investigation of plaintiff's involvement in the illegal dumping incident was a sham. *Id*. at 10.

### a. Policy or Custom of Discrimination

Plaintiff claims that SWM had a "pattern or practice" of discrimination. *Id.* at 5. Plaintiff's amended complaint alleges that "[a]ll [d]efendants, including SWM, by and through the conduct of its employees, have engaged in a pattern and/or practice of racial discrimination by unlawfully denying Mr. Johnson the benefits, privileges, promotional opportunities, and terms of conditions of his employment due to his race." Docket No. 31 at 15, ¶ 142. The amended complaint also alleges that "SWM has a longstanding policy and custom of treating Hispanic and Caucasian employees more favorably than its African American employees." Docket No. 31 at 14, ¶ 132; *see also id*. at 16, ¶ 147. It is not clear what plaintiff means by "pattern and/or practice" and whether it has a different meaning than "policy and custom." Plaintiff seems to use the terms interchangeably. *See* Docket No. 63 at 14 ("Despite their awareness that racial

14

discrimination is prohibited in the workplace, [defendants] have engaged in a longstanding pattern and practice of such discrimination.  Messrs. Brown, Johnson, and Reeves declare that this practice has been going on for more than 50 years, including the time that Williams, Lutz, and Pitt have served as the managers of SWM.  It is beyond cavil that there has been a longstanding custom or policy of racial discrimination at SWM, the individual [d]efendants have promulgated that policy, and the individual [d]efendants are not entitled [to] qualified immunity.") (internal citations omitted).  However, an "individual plaintiff[] cannot bring pattern-or-practice claims – only the U.S. Attorney General or a certified class can do so." *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012) (noting that "the method of proof for a pattern-or-practice claim differs from that used for individual discrimination claims, which are analyzed under the burden shifting *McDonnell Douglas* framework.").  "Proving an employer had such a policy does not prove individual employment decisions were discriminatory, although such evidence might be relevant to individual claims under the *McDonnell Douglas* framework." *Id.* (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004)).  In cases involving individual claims of discrimination, the focus is on the reasons for the particular employment decisions. *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)) ("In contrast, the initial focus in a pattern-or-practice case is not on individual decisions, 'but on a pattern of discriminatory decisionmaking.'" (quoting *Cooper*, 467 U.S. at 876)).  Accordingly, the Court will not analyze plaintiff's claims as "pattern or practice" claims as referred to in

*Daniels*, but rather will consider the evidence he adduces regarding alleged discrimination against other SWM employees in determining whether plaintiff was terminated pursuant to an alleged discriminatory custom or policy.[4]

Plaintiff attaches the declaration of Mr. Leston Reeves in support of his prima facie case of discrimination. Docket No. 63 at 12. Mr. Reeves states that, throughout his 27 years at SWM, he observed and suffered racial discrimination. Docket No. 63-4 at 1, ¶¶ 1, 3. Mr. Reeves contends that similarly situated non-Black employees were not disciplined or terminated when they engaged in similar conduct. *Id*. at 4, ¶ 12. Mr. Reeves recalls his own termination from SWM and states that he "was terminated for two reasons: damaging a SWM tractor in November 2014 by bending a bumper when backing up and being for being on my cell phone when I backed into the loading dock under the chute." *Id*. at 3, ¶ 9. Mr. Reeves mentions a situation in which two Hispanic employees, who were trying for an hour and a half to fix a clogged chute, burned up a motor that cost $20,000 to replace, but were not disciplined. *Id*., ¶ 10. Regarding the first infraction to which Mr. Reeves attributes his termination, he states that he "was in a rush to get my load and drive to the land fill in Keenesburg and back without incurring overtime. In my haste I caught my bumper on a wall and bent it." *Id*. Regarding the

---

[4]Plaintiff cites no authority to support the conclusion that circumstantial evidence of a discriminatory custom or policy, standing alone and without evidence that the adverse employment action was taken pursuant to a discriminatory custom or policy, is sufficient to establish a prima facie case of discrimination under the *McDonnell Douglas* framework. However, even if that was sufficient, as noted below, plaintiff fails to establish that SWM maintained a discriminatory custom or policy regarding the employment of Black workers.

second incident, Mr. Reeves states that, after answering his cell phone while driving, he "then simply backed into a loading dock." *Id*. at 4, ¶ 11.

Defendants argue that Mr. Reeves' anecdotal evidence of discrimination is conclusory and that he fails to identify any individual Hispanic or White employees who were promoted ahead of Black employees. Docket No. 86 at 5. Defendants further argue that the anecdotal evidence of one employee is insufficient to establish a pattern or practice of discrimination and that "it is unclear how anecdotal evidence related to [Dakota Reeves], unnamed Hispanic men, and [Mr.] Waddy supports [p]laintiff's discrimination claim." *Id*. at 6. "[A]necdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.'" *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 856 (10th Cir. 2000). Relevant considerations regarding the propriety of anecdotal evidence include whether the same supervisor was involved in prior discriminatory conduct, the proximity in time in which other purported acts of discrimination occurred, and whether the disciplinary action took place under similar circumstances. *Id.*; *Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177,1182-83 (10th Cir. 2002).

Mr. Reeves claims that he was summarily terminated for minor infractions in January 2015. Docket No. 63-4 at 1, ¶ 1. In November 2014, he damaged a vehicle while rushing his work, *id*. at 3, ¶ 10, and in the fall of 2014, while on his cell phone, he had another vehicle accident. *Id*. at 4, ¶ 11. Mr. Reeves does not indicate that he was disciplined as a result. However, in January 2015, he was again seen using his cell

17

phone while driving and was terminated. *Id.*, ¶ 12. Mr. Reeves states that "other, non-Black Equipment Operators have been observed many times talking on their cell phones while driving in traffic and were never disciplined, much less terminated, for it." *Id*. This general statement is conclusory and does not provide information about whether those drivers also had a record of vehicle accidents on the job. Mr. Reeves' anecdotes regarding his own experiences at SWM fail to support an inference of discrimination based on different treatment due to his race. The incidents for which he was disciplined do not involve sufficiently similar circumstances as the individuals to which he compares himself. *See Hysten*, 296 F.3d at 1182-83.

Mr. Reeves discusses the experience of Kevin Waddy, a seasonal worker who is Black and who allegedly was not promoted to a permanent full-time position as quickly as later-hired White and Hispanic seasonal employees. Docket No. 63-4 at 2. Mr. Reeves also discusses the experience of his son, Dakota Reeves, who is a full time employee at SWM. Mr. Reeves states that Dakota Reeves' supervisor does not promote Black employees to the Equipment Operator position, and that his son, despite having a class A Commercial Driver's License, was not promoted to Equipment Operator despite the fact that many of his non-Black co-workers with "only a class B license and [] fewer hours and years with the City have been promoted to Equipment Operators." *Id*.

None of the direct supervisors mentioned in Mr. Reeves' declaration are defendants in this case. Mr. Reeves' supervisor was Mr. Abeyta, Mr. Waddy's supervisor was Mr. Peachey, and Dakota Reeves' supervisor was Joe Santistevan. Docket No. 63-4 at 2-3, ¶¶ 5-6, 10. The only individual defendant mentioned in Mr.

Reeves' declaration is Mr. Williams, the SWM director.  Docket No. 63-4 at 2.

However, none of the actions that Mr. Reeves alleges were taken by Mr. Williams are

similar to Mr. Williams' decision to terminate plaintiff.  Mr. Reeves states that he told Mr.

Williams that Mr. Waddy had not been promoted to a permanent, full time position and

that, six months later, Mr. Waddy was promoted.  *Id.*  Mr. Reeves also states that Mr.

Williams spoke to Dakota Reeves in July 2015 about being promoted to Equipment

Operator and asked Dakota Reeves to call and remind him if he had not been promoted

by September.  *Id.*  It is unclear how these promotion anecdotes suggest that Mr.

Williams was acting pursuant to a policy of discrimination when he terminated plaintiff's

employment.[5]  In both of these anecdotes, Mr. Williams appears to take positive

employment actions towards Black employees.  While the positive employment actions

may not have occurred as quickly as Mr. Reeves believes was appropriate, no

reasonable jury could conclude that these promotion anecdotes give rise to an

inference of a policy or custom of discrimination in this case.  *See Carney*, 534 F.3d at

1277 ("[W]hen few anecdotes are offered, they should be closely analogous to the

circumstances in the case at bar.").

Plaintiff attaches his unsigned declaration to his response.  Docket No. 63-1.  In

his declaration, plaintiff identifies four "non-Black employees with less experience and

seniority" who were promoted ahead of him.  *Id*. at 2, ¶ 9.  Plaintiff identifies four

"Hispanic and White employees of SWM [who] have had accidents, broken rules and

---

[5]This is especially true given that plaintiff admits that "[p]laintiff's race did not play any role in Williams' decision to terminate his employment."  Docket No. 56 at 9, ¶ 64; Docket No. 68 at 1.

laws, and not been terminated or even disciplined." *Id*. at 3, ¶ 13.  Plaintiff states that "[o]ther Blacks at SWM have complained of racism" and that "Black workers at SWM are afraid to complain to management about their perceptions of racial discrimination because of the likelihood that they would lose their jobs." *Id*., ¶ 14.  Plaintiff also states that his former Hispanic supervisor, Mr. Santistevan, told him that he "would never become a driver," but when he transferred to Mikki Patterson's crew he "became a driver very quickly." *Id*. at 4, ¶ 19.  Plaintiff's affidavit does not discuss the qualifications of the non-Black employees he alleges were promoted ahead of him.  *See id*. at 2, ¶ 9.  The anecdotes regarding non-Black employees who allegedly broke rules and subsequently received positive employment actions do not provide sufficient context to evaluate whether they provide helpful comparators.  For example, none of the anecdotes discuss the length of time between the alleged misconduct and the subsequent positive employment action.  *See id*. at 2, ¶ 9.  The anecdotes about Mark Rodriguez and Delbert Lilly state that they damaged equipment, but the fact that an employee damaged equipment does not compel the conclusion that such damage was the result of misconduct.  *Id*. at 3, ¶ 13.  Plaintiff's statement that other Black workers have complained of racism at SWM is too speculative, conclusory, and self-serving to infer that a policy or custom of discrimination existed at SWM.  *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Conclusory and self-serving affidavits are not sufficient" to create a material factual dispute.); *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("[E]vidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.  Unsubstantiated allegations carry no probative

weight in summary judgment proceedings.") (internal citations and quotations omitted).

Last, there is no reason to infer that Mr. Santistevan's statement that plaintiff would

never become a driver was due to a policy of racism at SWM, especially since plaintiff

was promoted to driver by his next SWM boss.  In fact, plaintiff's affidavit admits that

plaintiff was promoted four times in his thirteen years employed at SWM.  *Id*. at 2, ¶ 9.

Plaintiff does not describe any discrimination against him other than not being

selected for the mentorship program.  Docket No. 63 at 5; Docket No. 63-1 at 2-3, ¶ 12.

Plaintiff states that SWM's refusal to include him in the Mentorship Program is "an

example of the longstanding pattern and practice of discrimination against Black

employees at SWM."  Docket No. 63 at 5.  Defendants argue that they "legitimately

denied [p]laintiff entry to the mentorship program because his score relative to his peers

was not high enough for entry into the program."  Docket No. 56 at 14.  Plaintiff does

not dispute that he received a lower score relative to his peers who were enrolled in the

program, but instead argues that defendants improperly used subjective grading

criteria.  Docket No. 63 at 5; Docket No. 63-1 at 2-3, ¶ 12.  Plaintiff fails to provide any

evidence showing that the grading criteria used by defendants, even if subjective, was

used to discriminate.  Thus, the Court finds that plaintiff fails to establish that the City or

any individual defendant took part in a policy or custom of racial discrimination.

### b.  Sham Investigation

Plaintiff argues that defendants "seized on the coincidence of [p]laintiff Eric

Johnson's presence at the Station on that day to terminate him," Docket No. 63 at 1,

and claims that the investigation into the illegal dumping incident was a sham.  *Id*. at 10.

21

Plaintiff, however, does not identify any evidence related to the investigation itself that would lead to an inference of discrimination.

Plaintiff asserts that Ms. Pitt, an SWM manager who was put in charge of the investigation into the dumping incident, had no training or experience in conducting such investigations.  Docket No. 63 at 11.  Plaintiff also points to some inconsistencies in Ms. Pitt's recollection of the timeline surrounding the events of May 24, 2013.  *Id*. Plaintiff argues that "Pitt and the other individual [d]efendants did not take into account video footage from the Kiosk showing Abeyta waving two trucks pulling large, tarped trailers into the Station more than 45 minutes after Messrs. Boone and Johnson walked out of the facility."  *Id*.  Plaintiff notes that "the video purportedly showing Mr. Johnson's involvement in the [d]ump was destroyed," and that Ms. Pitt told Mr. Johnson that he "'had to take her word' that she saw other evidence that incriminated him on the video." *Id*. at 10-11.

Plaintiff may have identified ways in which he believes defendants' investigation was flawed, but even if a jury thought that the illegal dumping incident was not the reason for plaintiff's termination and that the City used the incident as pretext, plaintiff provides no basis to believe that defendants' decision to terminate plaintiff was due to a discriminatory animus.  Plaintiff does not dispute that Mr. Williams had the sole authority to terminate plaintiff.  Docket No. 56 at 9, SUMF 63.  More importantly, plaintiff admits that plaintiff's race did not play any role in Mr. Williams' decision to terminate his employment.  *Id*., SUMF 64.  If the person who had the sole decision-making authority

to terminate plaintiff did not use plaintiff's race to make the termination decision, it is difficult to understand plaintiff's causation theory.[6]

Plaintiff concedes that he has never witnessed the five defendants making any racially derogatory comments toward him or about African-Americans in general. Docket No. 56-1 at 5-9 (Johnson Depo., 32:20-33:1, 39:6-11, 40:10-23, 42:3-14, 43:2-12, 45:12-20).  Plaintiff has never previously complained of race discrimination to any court or agency.  Docket No. 56 at 9, SUMF 65.  Moreover, defendants note that a non-Black employee was also terminated for the same illegal dumping incident and argue that plaintiff therefore cannot identify any similarly situated non-Black employee who was treated differently under the same circumstances.  Docket No. 56 at 10.

Viewing the facts in a light most favorable to plaintiff, the Court finds that plaintiff has failed to carry his burden under step one of the *McDonnell-Douglas* framework to show that the challenged action took place under circumstances giving rise to an inference of discrimination.  As such, the Court finds that plaintiff has failed to state a prima facie case of discrimination against any defendant and that defendants are entitled to summary judgment on plaintiff's race-discrimination claims.

Plaintiff states that he has presented evidence of a longstanding policy of discrimination against Black employees at SWM in support of his *Monell* municipal liability claim.  Docket No. 63 at 12.  However, as previously discussed, plaintiff has failed to establish an underlying constitutional violation by a municipal employee.  *See*

---

[6]Plaintiff does not articulate a "cat's paw" theory of liability, and it is not incumbent upon the Court to consider one.  *See EEOC v. BCI Coca-Cola Bottling Co., of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006).  No allegations in the complaint appear to support a cat's paw or rubber stamp theory.

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (holding that plaintiff asserting municipal liability claim must prove that a municipal employee committed a constitutional violation).  Accordingly, plaintiff's municipal liability claim fails.

### c. Pretext

Even assuming plaintiff could establish a prima facie case of discrimination, the Court finds that plaintiff has failed to put forth sufficient evidence to establish that defendants' justification for his termination was mere pretext for terminating him because of his race.

Defendants assert plaintiff was terminated due to his "knowledge of and failure to report illegal dumping and dishonesty."  Docket No. 56 at 10.  This reason for terminating plaintiff is not facially prohibited.  Defendants have thus articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment.  Accordingly, the burden shifts to plaintiff to show that defendants' reason for terminating him was pretextual.  "[E]vidence of pretext may include, but is not limited to . . . : 'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999)).

While a plaintiff is not required "to offer any evidence of actual discrimination when attempting to show pretext," *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125

(10th Cir. 2005), Mr. Johnson has not provided any evidence from which an inference of discrimination could arise. Whether the investigation, and the conclusions therefrom, were "wise, fair, or even correct" is immaterial so long as they were truly the reason for plaintiff's termination and those reasons were non-discriminatory. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1083 (10th Cir. 1999) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)); *see also Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680-81 (7th Cir. 1997) ("Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.").

As noted above, plaintiff does not dispute that his race played no role in Mr. Williams' decision to terminate his employment, and that plaintiff has never previously complained of race discrimination at SWM to any court or agency before this suit. Docket No. 56 at 9, SUMFs 64-65. Defendants conducted an investigation into the circumstances surrounding an illegal dumping incident and came to the conclusion that plaintiff was dishonest about his knowledge regarding the circumstances of that incident. *See* Docket No. 56 at 9, SUMF 67. The disciplinary letter sent to plaintiff dated June 18, 2013 provides that, pursuant to Career Service Rule 16-60, "[a]ny act of dishonesty, which may include but is not limited to . . . [l]ying to superiors" may be cause for dismissal. Docket No. 31-6 at 1. Plaintiff has not provided the Court with any reason to infer illegal discrimination from SWM's conclusion that plaintiff was dishonest about his knowledge regarding the events of May 24, 2013. As a result, even if plaintiff had made out a prima facie case of discrimination, plaintiff has shown no evidence that "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

25

the employer's proffered legitimate reasons for its action [could lead] a reasonable factfinder [to] rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colo. Judicial Dept.*, 427 F. 3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Kathy Billings, Mike Lutz, Lars Williams, Charlotte Pitt, and Richard Villa's Motion to Dismiss Second Claim for Relief [Docket No. 35] is **DENIED**.  It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 56] is **GRANTED**.  It is further

**ORDERED** that judgment shall enter in favor of defendants and against plaintiff as to all of plaintiff's claims for relief.  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that the March 25, 2016 Trial Preparation Conference and the April 11, 2016 Trial are **VACATED**.  It is further

**ORDERED** that this case is dismissed in its entirety.

DATED March 21, 2016.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge